# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

_____

**In Re:**

JAMES D. PIERCE,

**Debtor.**

**Bankruptcy Case
No. 09-02107-JDP**

_____

JEREMY GUGINO, Trustee,

**Plaintiff,**

**vs.**

MIRANDA M. ORTEGA,

**Defendant.**

**Adv. Proceeding No. 09-6072**

_____

## MEMORANDUM OF DECISION

_____

**Appearances:**

Noah G. Hillen, HALL, FARLEY, OBERRECHT & BLANTON, Boise, Idaho, Attorney for Plaintiff.

David A. Kras, Boise, Idaho, Attorney for Defendant.

MEMORANDUM OF DECISION - 1

## Introduction

Plaintiff Jeremy Gugino ("Trustee"), trustee in the chapter 7

bankruptcy case of James D. Pierce ("Pierce"), has moved for entry of a

summary judgment in this adversary proceeding which he is prosecuting

against Defendant Miranda M. Ortega ("Ortega").  In this action, and

through his motion, Trustee seeks to avoid Pierce's alleged fraudulent

transfer of his interest in a boat made to Ortega pursuant to § 548(a)(1)(B).[1]

Because the Court concludes there remains a question of material fact

regarding the value of the interest allegedly transferred and, consequently,

whether Pierce received a reasonably equivalent value in the transfer, the

Court denies the motion.

## Facts

The following are the material, undisputed facts.

On April 23, 2008, an individual sold a 2006 Bayliner XT boat (the

---

[1]  Unless otherwise indicated, all statutory references are to the
Bankruptcy Code, 11 U.S.C. §§ 101 - 1532, and all rule references are to the
Federal Rules of Bankruptcy Procedure, Rules 1001 - 9037.  The Federal Rules of
Civil Procedure are referred to as Civil Rules.

MEMORANDUM OF DECISION - 2

"Boat") to Ortega and Pierce for $10,000.  Docket No. 11, Ex. A at 9.[2]  On

June 6, 2008, an application for certificate of title for the Boat was

submitted to the Idaho Transportation Department.  The application was

signed by Ortega, and designated Ortega "or" Pierce as purchasers –

owners.  *Id.* at 6.  The Idaho Transportation Department thereafter issued a

certificate of title to the Boat on June 11, 2006, listing Ortega "or" Pierce as

the owners.  *Id.* at 4.

Several months later, on January 21, 2009, Ortega filed another

application for certificate of title.  Docket No. 11, Ex. A at 3.  This

application was captioned "Name Change – Regular Title," listed only

Ortega as the owner, and indicated a gross sales price of "$0.00."  *Id.*

Although a copy of the new certificate is not in the record, a certified copy

of a Motor Vehicle Record Request issued to Trustee on September 2, 2009,

indicates that a certificate of title to the Boat listing only Ortega's name as

owner was recorded on January 21, 2009 and issued on February 4, 2009.

---

[2]  Unless otherwise indicated, docket references are to the Adversary
Proceeding.

MEMORANDUM OF DECISION - 3

*Id.* at 1.

Pierce filed a chapter 7 petition on July 20, 2009, accompanied by his Statement of Financial Affairs ("SOFA"). *See* Bankr. Case No. 09-02107-JDP, Docket No. 1. In response to question 10 in the SOFA, which identifies "Other transfers" of property, Pierce noted that he "was incorrectly listed as owner of 2006 Bayliner boat with Miranda Ortega[,]" and that he "transferred his incorrect 'interest' to [Ortega]" in January of 2009. *Id.* at 29.

On Pierce's Summary of Schedules, he listed total assets of $5,055.00 and total liabilities of $42,221.11. *Id.* at 22. On motion of Trustee, the Court ordered Pierce to amend his Schedule F to provide information on the dates his debts were incurred. Bankr. Docket No. 30. On November 30, 2009, Pierce submitted an Amended Schedule F, confirming a total of $42,211.11 in unsecured debts, all of which were incurred before January 21, 2009. Bankr. Docket No. 34.

MEMORANDUM OF DECISION - 4

## Status of Proceedings and Arguments of the Parties

Trustee commenced this adversary proceeding on September 11, 2009, seeking a judgment avoiding the transfer of Pierce's interest in the Boat to Ortega pursuant to § 548(a)(1)(B). Docket No. 1. In his Complaint, Trustee alleged the elements of fraudulent transfer, in that Pierce transferred his interest in the Boat to Ortega for less than a reasonably equivalent value, at a time when he was insolvent, and within two years of the filing of his petition. *Id.* at ¶¶ 15-20. Ortega filed an Answer to the complaint on October 9, 2009, in which she generally denied Trustee's allegations. Docket No. 6.

Trustee moved for summary judgment on all claims on February 12, 2010, arguing that the elements of fraudulent transfer under § 548(a)(1)(B) had been satisfied. Trustee's motion was supported by the affidavits of Trustee and his counsel. Docket No. 11. Ortega replied on March 5, 2010, challenging Trustee's argument that Pierce did not receive a reasonably equivalent value in the exchange. Ortega argued that a party receives reasonably equivalent value if it gets roughly the value it gave, and that

MEMORANDUM OF DECISION - 5

here, Pierce neither contributed any funds when the Boat was purchased,

nor received any funds when the title was later changed.  Ortega's reply

was supported by Ortega's affidavit, in which she stated under penalty of

perjury that she provided all funds for the purchase of the Boat.  Docket

No. 14.

A hearing on Trustee's motion for summary judgment was held on

March 22, 2009, at which Trustee and Ortega appeared through counsel.

Both parties agreed that, pursuant to Idaho Code § 49-503, because his

name appeared on the title certificate, Pierce had an interest in the Boat at

the time his name was removed from the certificate.  The parties dispute,

however, the value of Pierce's interest.  Ortega argued that it was zero,

because she paid for the Boat out of her personal funds, and that Pierce

was listed on the title only by error.  Trustee countered that any error on

the title was not relevant, and that Pierce at least had the right to sell the

Boat.  At the conclusion of the hearing the Court took the issues under

advisement.

MEMORANDUM OF DECISION - 6

## Discussion

## I.

Summary judgment may be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Civil Rule 56(c)(2), incorporated by Rule 7056.  *Barboza v. New Form, Inc. (In re Barboza)*, 545 F.3d 702, 707 (9th Cir. 2008).  The Court does not weigh evidence in resolving such motions, but rather determines only whether a material factual dispute remains for trial. *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997); *Jones v. State Farm Mut. Auto Ins. Co. (In re Jones)*, 401 B.R. 456, 460 (Bankr. D. Idaho 2009).

A dispute is genuine if there is sufficient evidence for a reasonable fact finder to hold in favor of the non-moving party and a fact is "material" if it might affect the outcome of the case.  *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986)); *In re Jones*, 401 B.R. at 460.  The initial burden of

MEMORANDUM OF DECISION - 7

showing there is no genuine issue of material fact rests on the moving party. *Margolis v. Ryan*, 140 F.3d 850, 852 (9th Cir. 1998); *Esposito v. Noyes (In re Lake Country Invs.)*, 255 B.R. 588, 597 (Bankr. D. Idaho 2000). If the non-moving party bears the ultimate burden of proof on an element at trial, that party must make a showing sufficient to establish the existence of that element in order to survive a motion for summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

## II.

Trustee 's motion for summary judgment is based upon his position that Pierce made an avoidable fraudulent transfer to Ortega for purposes of § 548(a)(1)(B), which provides, in relevant part:

> (a)(1) The trustee may avoid any transfer . . . of an interest of the debtor in property . . . that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor, voluntarily or involuntarily . . . (B)(I) received less than a reasonably equivalent value in exchange for such transfer or obligation; and (ii)(I) was insolvent on the date that such transfer was made or such obligation incurred[.]

Under this statute, in order to establish a prima facie case for avoidance, Trustee must show that: (1) there was a transfer of an interest

MEMORANDUM OF DECISION - 8

in Pierce's property; (2) that Pierce was insolvent at the time of the

transfer; (3) that the transfer occurred within two years of the filing of

Pierce's bankruptcy petition; and (4) that Pierce received less than a

reasonably equivalent value in exchange for the transfer. *Decker v.*

*Advantage Fund Ltd.*, 362 F.3d 593, 596 (9th Cir. 2004); *Jordan v. Kroneberger*

*(In re Jordan)*, 392 B.R. 428, 440 (Bankr. D. Idaho 2008).

No genuine issues of material fact remain as to the first three of

these elements.  However, Ortega has produced evidence sufficient to call

into question the value of Pierce's interest in the Boat and, consequently,

whether Pierce received less than a reasonably equivalent value for the

transfer.

### A.

### Pierce transferred an interest in property to Ortega while insolvent and within two years of filing his bankruptcy petition.

The Bankruptcy Code defines "transfer" broadly as "each mode,

direct or indirect, absolute or conditional, voluntary or involuntary, of

disposing of or parting with — (I) property; or (ii) an interest in property."

MEMORANDUM OF DECISION - 9

11 U.S.C. § 101(54)(D).  The § 101(54)(D) definition is applicable to

determining whether a fraudulent transfer has occurred under § 548.  *BFP*

*v. Resolution Trust Corp.*, 511 U.S. 531, 535 (1994).  When the State of Idaho

issues a new certificate of title showing a different "owner," a transfer has

occurred for bankruptcy purposes from the owner listed in the former

certificate to the owner listed in the new certificate.  *Gugino v. Knezevich (In*

*re Pegram)*, 395 B.R. 692, 696 (Bankr. D. Idaho 2008).

Here, it is undisputed that Pierce "or" Ortega were listed as owners

on the certificate of title issued on June 11, 2008.  It is also undisputed that

only Ortega is listed as owner on the certificate of title issued on February

4, 2009.  Under this Court's ruling in *In re Pegram*, Pierce's interest in the

Boat was transferred to Ortega when the second title was issued without

his name.[3]  Trustee has therefore established that Pierce transferred his

interest to Ortega, something which Ortega has not challenged.

Section 548(d)(1) governs when a transfer is deemed to have

_____

[3]  Pierce seems to acknowledge as much in his SOFA when he indicated
that he transferred his "incorrect interest" to Ortega in January 2009.  Bankr.
Docket No. 1 at 29.

MEMORANDUM OF DECISION - 10

occurred for purposes of § 548.  The statute provides:

> For the purposes of this section, a transfer is made when such
> transfer is so perfected that a bona fide purchaser from the
> debtor against whom applicable law permits such transfer to
> be perfected cannot acquire an interest in the property
> transferred that is superior to the interest in such property of
> the transferee[.]

11 U.S.C. § 548(d)(1).  Under Idaho law, perfection of an interest in a

vehicle requires issuance of a certificate of title.  Idaho Code § 49-503

(stating that "no person acquiring a vehicle from the owner . . . shall

acquire any right, title, claim or interest in or to the vehicle until he has

issued to him a certificate of title to that vehicle").[4]

The record shows that the second certificate of title, removing Pierce

as a titled owner of the Boat, was issued on February 4, 2009.  Thus, under

§ 548(d)(1) and state law, perfection of the transfer of Pierce's interest to

Ortega occurred no earlier than February 4, 2009, or in other words,

---

[4] Under Idaho's Vessel Titling Act, Idaho Code §§ 67-7039 through 7041,
titling procedures for vessels are governed by the same statutes which govern
motor vehicles, *i.e.,* title 49, Idaho Code.  For purposes of vessel titling, then, the
term "vessel" is to be used interchangeably with the term "vehicle" throughout
title 49 of the Idaho Code.  Idaho Code § 67-7039(3).

MEMORANDUM OF DECISION - 11

within two years of Pierce's bankruptcy filing on July 20, 2009.

Finally, Trustee has shown, without dispute, that Pierce was insolvent at the time of that transfer. The definition of insolvency in § 101(32) applies for purposes of § 548(a)(1)(B). *Murrietta v. Fehrs (In re Fehrs)*, 391 B.R. 53, 74 (Bankr. D. Idaho 2008). Under § 101(32), "[t]he term 'insolvent' means — (A) with reference to an entity other than a partnership and a municipality, financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation [subject to exclusions not pertinent in this case]."

As discussed above, the transfer occurred on February 4, 2009 and insolvency must be measured on that date. Pierce's Summary of Schedules, submitted on July 20, 2009, showed that he had total assets of $5,055.00 and total liabilities of $42,221.11. In response to this Court's order, Pierce amended his Schedule F to provide the dates on which his liabilities were incurred, and all debts listed on this Amended Schedule F were incurred before January 21, 2009. An examination of his SOFA, submitted on July 20, 2009, reveals there was no significant changes in

MEMORANDUM OF DECISION - 12

Pierce's assets or other financial conditions between January 21, 2009 and

the filing of the petition.  The Court therefore agrees with Trustee's

argument that the record shows that Pierce was insolvent on the date of

the  transfer.

**B.**

**A question of material fact remains regarding whether Pierce
received a reasonably equivalent value in exchange for the transfer.**

The critical issue in this summary judgment proceeding is whether

Pierce received less than a reasonably equivalent value for the transfer of

his title interest in the Boat to Ortega.

The Court employs a two-step process in determining whether a

debtor received a reasonably equivalent value.  *In re Jordan*, 392 B.R. at 441.

First, the Court must determine that the debtor received value.  The

Bankruptcy Code's definition of value, for § 548(a)(1)(B) purposes, is

found at § 548(d)(2)(A):  "[V]alue means property, or satisfaction or

securing of a present or antecedent debt of the debtor[.]"  A transfer is for

value if one is the quid pro quo of the other.  *In re Jordan*, 392 B.R. at 441

MEMORANDUM OF DECISION - 13

(citing *Pummill v. Greensfelder, Hemker & Gale (In re Richards & Conover Steel Co.)*, 267 B.R. 602, 612 (8th Cir. BAP 2001).

If the debtor received value for a transfer, the Court must then determine whether that value was the reasonable equivalent of what the debtor gave up. *In re Jordan*, 392 B.R. at 441. While this involves a question of fact, the Court is accorded wide discretion in making this determination. *Jacoway v. Anderson (In re Ozark Rest. Equip. Co.)*, 850 F.2d 342, 344 (8th Cir. 1988); *Salven v. Munday (In re Kemmer)*, 265 B.R. 224, 232 (Bankr. E.D. Cal. 2001). Of course, the determination is to be made at the time of the transfer. *BFP*, 511 U.S. at 546.

The common thread expressed in the case law instructs that the Court must have a quantifiable basis for its valuation, although the information available to the Court need not be precise. *BFP*, 511 U.S. at 540 n. 4 ("Our discussion assumes that the phrase 'reasonably equivalent' means 'approximately equivalent,' or 'roughly equivalent.'"). To satisfy this standard, a summary judgment movant must provide the Court some rough or approximate understanding of the financial value of the transfer

MEMORANDUM OF DECISION - 14

so that it can analyze the effect of avoidance of the transfer on funds

available to the debtor's estate.   *Frontier Bank v. Brown (In re N. Merch.,*

*Inc.)*, 371 F.3d 1056, 1059 (9th Cir. 2004) ("The  primary focus of the Court

must be on the net effect of the transaction on the debtor's estate and the

funds available to the unsecured creditors.").

Here, Trustee has not provided sufficient information about the

values of what Pierce gave up, nor concerning what he may have gained,

in connection with the target transfer.  The closest Trustee comes to a

financial valuation of the transfer is a statement which appears in his brief

in support of his motion for summary judgment:

> Debtor gave up significant value when his name was taken off
> the certificate of title to the Boat.  Debtor and Defendant
> acquired an ownership interest in the boat on June 6, 2008, for
> a price of $10,000. . . .  In the instant case, Debtor did not
> receive a reasonably equivalent value for the Boat because he
> did not get approximately the value he gave.  Debtor gave his
> ownership interest in the Boat, which was valued at $10,000,
> approximately six months prior to the transfer.  Debtor
> received no value in return.  Therefore, it is axiomatic that
> Debtor did not receive a reasonably equivalent value.

Docket No. 11-1, at p. 8.  Trustee's statement is not axiomatic; indeed, it is

MEMORANDUM OF DECISION - 15

somewhat misleading.  Twice, Trustee links the value of Pierce's interest to

the amount paid for the Boat.  Trustee has not provided the Court with

evidence, or even reasoned argument, to establish that the value of the

Boat was $10,000 on the date of transfer, some nine months after Ortega

(with or without Pierce) purchased the Boat.[5]  But even if the value of the

Boat could be set at $10,000, this does not show that the value of Pierce's

interest in the Boat was $10,000 when he transferred it to Ortega.

Instead, Trustee founds his claim that a fraudulent transfer occurred

on the notion that, prior to transferring his interest, Pierce was a co-owner

of the Boat pursuant to Idaho Code § 49-503, and therefore, was entitled to

sell the Boat and to receive its entire fair market value.  However, Trustee's

theory fails to consider that there was another owner of the Boat at the

time of transfer – Ortega – who, pursuant to Idaho Code § 49-503, had at

---

[5]  Quite to the contrary, there is evidence in Trustee's pleadings that less than two years before the Boat was acquired by Ortega and Pierce, the boat was sold to its previous owner for approximately $16,000.  Docket No. 11, Ex. A at 3. A 37.5% decline in the sale price over an approximate two-year span does not support a finding that the Boat's value remained constant over the following nine months.

MEMORANDUM OF DECISION - 16

least the same rights of ownership as Pierce.

Under prompting by the Court, Trustee's counsel clarified at the hearing that there was at least one right that Pierce unquestionably had that he gave away in the transfer – the power to sell the Boat. The Court agrees with Trustee that the plain meaning of, and case law interpreting, Idaho Code § 49-503 gives an owner listed on a title the authority to sell the titled property. However, the implication that the value of that power is equal to the  amount of the proceeds of the sale is not supported by the case law. Recently, this Court commented on the willingness of Idaho courts in reviewing sales of personal property to consider the rights of other parties in interest. "[T]he 'principle is well settled that a seller of personal property can convey no greater title than he had, and it makes no difference that the purchaser has no notice and is ignorant of the existence of other parties in interest.'" *Hopkins v. Cummins (In re Mason)*, 06.2 I.B.C.R. 17, 19 (Bankr. D. Idaho 2006) (quoting *Federal Land Bank of Spokane v. McCloud*, 20 P.2d 201, 204 (Idaho 1933)). The Idaho Supreme Court in *McCloud*, cites with approval *Klundt v. Bachtold*, 188 P. 924, 927 (Wash.

MEMORANDUM OF DECISION - 17

1920), which noted:

> Where one who has a common ownership with another of
> personal property undertakes to and does sell the whole of
> the property, there is one of two courses open to the other
> owner:  First, he may become co-owner with the new
> purchaser, or, if the new purchaser has destroyed the
> property, he may recover of him the value of his interest.

*Klundt*, 188 P. at 927 (additional citations omitted).

Although the *McCloud* and *Klundt* courts were not considering the

sale of personal property by an owner selling under authority of title, they

do evince a willingness in the state courts to consider the interests of other

parties whose ownership interests may be impacted by such sales.  Here

Trustee suggests that the measure of Pierce's interest in the Boat is his

ownership right to sell the Boat and gain the proceeds of any such sale.

The Court concludes that, if this is a measure of the value that the debtor

gave away, the Court could, based on equitable considerations, as well as

state case law, reduce that value by the value of Ortega's interest in the

Boat that would be extinguished in such a sale.  Since Ortega has provided

evidence that she paid the $10,000 purchase price of the Boat from her own

MEMORANDUM OF DECISION - 18

funds, and that the listing of Pierce's name on the title was a "mistake," it

is at least arguable that whatever the Court ultimately determines the

value of Pierce's power to sell the Boat to be, should be reduced for

valuation purposes by the value of Ortega's ownership interest, which

could result in a net valuation of Pierce's ownership interest as zero.

In addition to valuing the interest which Pierce transferred, the

Court must independently value any gain which Pierce realized from the

transfer. *Richard & Connor Steel*, 267 B.R. at 612-13 ("Beyond looking at

what is exchanged in a quid pro quo transaction, it is important to

examine the value of all benefits inuring to a debtor by virtue of the

transaction in question, directly or indirectly.").  Although Trustee and

Ortega suggest that no funds were exchanged when the new title was

issued and the transfer occurred, the Court's focus should not be so

limited.  For example, it is conceivable that Pierce realized a gain in the

form of decreased liability for maintenance and upkeep, storage fees,

insurance, taxes, and other costs associated with the ownership of the Boat.

 The Court simply has no information at present to gauge any such gains,

MEMORANDUM OF DECISION - 19

if any.

Moreover, if the Court focuses on the value of what Ortega received when the title was changed to omit Pierce's name, an even stronger case can be made that neither party to the transaction benefitted in any quantifiable sense. Even before the title transfer, Ortega also had the right to sell the Boat; the title transfer merely gave her the *exclusive* right to sell the vessel. And there is no evidence that before and after the transfer Ortega had possession, and enjoyed the use of, the Boat. Whatever Ortega gains via the transfer, it is highly unlikely it was of significant value.[6]

---

[6] The facts in this case are different from those in which the trustee has been allowed to take possession of, and to sell for creditors, a vehicle transferred by the debtor before bankruptcy, but where the title certificate still lists the debtor as an owner on the petition date. *See, e.g., In re Pegram*, 395 B.R. at 696; *In re Woods*, 386 B.R. 758, 762 (Bankr. D. Idaho 2008). In those cases, the debtor's right to sell the car under Idaho law becomes property of the bankruptcy estate when the petition is filed, and the trustee is allowed to exercise that right. That result is also justified because the trustee stands in the shoes of a hypothetical judgment lien creditor of the debtor as of the date of bankruptcy. *See, e.g., Hopkins v. Brasseaux (In re Saunders)*, 08.1 I.B.C.R. 16 (Bankr. D. Idaho 2008). In other words, the trustee, representing the debtor's creditors, prevails against the co-owner because the Idaho law dictates that the debtor's name on the title certificate be treated as conclusive evidence of ownership of the vehicle. But this dispute raises different considerations and issues. Here, the focus is solely on what the debtor gave up, as compared to what he received in return, as a result of the change in names on the title certificate.

MEMORANDUM OF DECISION - 20

## Conclusion

Trustee did not provide adequate information to enable the Court to value the interest allegedly lost by Pierce as a result of this transfer.  That the value of the Boat may have been $10,000 at the time of its purchase by Ortega, and allegedly, Pierce, does not prove the value of Pierce's interest in the Boat at the time of the subsequent transfer was the same.  Indeed, if Ortega was at all times the "true" owner of the Boat, it is doubtful Trustee can prove that Pierce gave up anything of significant value as a result of the transfer of his right to sell the Boat to another.

Because there is an unresolved question of material fact concerning the value of Pierce's interest which was transferred to Ortega, Trustee's motion for  summary judgment will be denied by separate order.

///

///

///



Dated:  April 12, 2010

MEMORANDUM OF DECISION - 21

_____

Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION - 22